UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIGHTHOUSE COMMUNITY CHURCH OF
GOD,

                              Plaintiff,        CIVIL CASE NO. 05-40220

v.

                                          HONORABLE PAUL V. GADOLA
CITY OF SOUTHFIELD, et al.,                    U.S. DISTRICT COURT

                              Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

      Plaintiff Lighthouse Community Church of God filed this action against Defendants City of

Southfield; Nicholas Banda, the Director of Planning and Economic Development for the City of

Southfield; and other unnamed Planning, Building, and Zoning Officials acting in their official

capacity for the City of Southfield (collectively referred to as "Defendants"). Plaintiff claims,

among other things, that Defendants violated Plaintiff's rights under the Religious Land Use and

Institutionalized Persons Act ("RLUIPA") (codified at 42 U.S.C. § 2000cc, *et seq.*), by denying

Plaintiff the ability to obtain a certificate of occupancy for a building owned by Plaintiff located in

the City of Southfield. Before the Court are motions for summary judgment filed by each party. For

the reasons set out below, the Court denies Defendants' motion for summary judgment and grants

Plaintiff's partial motion for summary judgment.

## I.    Background

      The dispute in this case centers on a 2-story, 20,000 square foot building, located at 20830

Rutland Drive in Southfield, Michigan, owned by Plaintiff. Plaintiff previously owned real property

and met for worship in Detroit, Michigan.  In 2003, Plaintiff became interested in relocating to Southfield because many of its congregational members lived in the Southfield area.  In June 2003, Plaintiff discovered the Rutland building and began considering its purchase for use as a church.

The Rutland building is located in a zoning district in which churches are a permissible use. To operate as a church, however, a certificate of occupancy must also be obtained.  Prior to the purchase of the Rutland building, at least a portion of the building was used by the Evangelistic Holiness Church and the AME Zion Church.  The parties disagree about the extent the building was used by the earlier churches.  Plaintiff alleges that the previous churches held worship services in the Rutland building on a consistent basis for at least 8 years.  Defendants deny that the Rutland building was ever used previously for worship services and allege that if worship services were held, they were done illegally and without Defendants' knowledge and consent.

After becoming interested in purchasing the Rutland building, Plaintiff's pastor, Demetrius Booker, began a series of meetings and communications with Nicholas Banda, the Director of Planning and Economic Development for the City of Southfield.  The parties dispute the content and tone of these communications.  Plaintiff alleges that initially Defendants welcomed Plaintiff's purchase of the building and assured Plaintiff that the building could be used as a church. Defendants, on the other hand, allege that they never represented to Plaintiff that the Rutland building could be used as church.  Plaintiff purchased the Rutland building in February 2004. Plaintiff alleges that it would have never purchased the building if Defendants had not represented that the building could be used for religious purposes.

Plaintiff alleges that during 2004 the City of Southfield began discussions with a developer about the possibility of developing property adjacent to the Rutland building for a gated residential

2

community. This proposal would increase the taxable value of the property and create millions of dollars of revenue for the City. Plaintiff also alleges that Defendants became less supportive of the Church's use of the Rutland building and that Defendants discussed with the developer the possibility of the Church running out of money and being forced to close. The alleged plan then foresaw the developer purchasing the Rutland building for the planned residential development. Defendants deny that any representative of the City discussed plans to obtain Plaintiff's building for the residential development.

In October 2004, after discovering that Plaintiff was using the building for church services, the City sent a letter to Plaintiff indicating that Plaintiff would have to vacate the building because it did not have a certificate of occupancy permitting Plaintiff's use of the building. In May 2005, the City eventually issued a civil infraction ticket against Plaintiff for occupying the building without a certificate of occupancy. At a hearing before a state court judge, the Church was found responsible for the civil infraction. The state court then issued an order requiring Plaintiff to cease and desist using the building. *See* Pl. Exhibits 20, 23 (June 5, 2006) [docket entries 55, 56]. Plaintiff has been unable to use its building for worship purposes since August 12, 2005.

An important issue that is in dispute between the parties is the number of available parking spaces at the Rutland building. When the Rutland building was first built in the 1960s, it was created with 73 parking spaces. These 73 parking spaces are still marked out at the site of the building. Defendants assert, however, that these 73 parking spaces violate current federal, state, and local regulations for size and shape. When all current regulations are taken into account, there is only room for 48 parking spaces at the Rutland building. Though no parking is permitted on Rutland Drive, there is two-hour street parking on some nearby streets. It is Defendants' position

that a total of 95 parking spaces are required to adequately cover the projected use of the building. According to Defendants, Plaintiff's primary obstacle to obtaining a certificate of occupancy for the Rutland building is that there are too few parking spaces for Plaintiff's proposed use of the building.

Plaintiff initially filed a motion for a preliminary injunction in an attempt to prevent Defendants from excluding Plaintiff from its use of the building. This Court denied the motion for preliminary injunction and ordered the parties to begin an accelerated discovery period. Following discovery, the parties filed timely cross-motions for summary judgment. Defendants' motion for summary judgment was filed on June 5, 2006. Plaintiff's motion for partial summary judgment was first filed on June 5, 2006 and later amended on June 14, 2006. One of the arguments brought by Defendants in their motion for summary judgment against Plaintiff is a challenge to the constitutionality of RLUIPA. Consequently, the United States Government has intervened in this case for the sole purpose of defending the constitutionality of RLUIPA.

On August 25, 2006, oral arguments on the summary judgment motions were presented to the Court by counsel for Plaintiff, Defendants, and the United States. During the hearing, it became evident to the Court that there was a dispute between the parties as to whether Plaintiff had sufficiently exhausted its administrative remedies by filing an application for a parking variance. In order to ensure that all administrative remedies were exhausted, decisions on the summary judgment motions were held in abeyance and the Court ordered Plaintiff to immediately file an application for a parking variance with the City of Southfield Zoning Board of Appeals ("ZBA"). Plaintiff's application was considered by the ZBA at a hearing held on October 17, 2006. At the October 17, 2006 hearing, the ZBA granted Plaintiff's application for setback and landscaping variances, but denied the application for a parking variance.

4

The parties reappeared before this Court on November 1, 2006 to notify the Court of the ZBA's decision concerning Plaintiff's parking variance application. At the November 1 hearing, the parties agreed to attempt to reconcile their dispute with the aid of a facilitator. Decisions on the motions for summary judgment continued to be held in abeyance pending the facilitation. On November 20, 2006, the parties participated in a facilitation conference held by the Honorable Bernard Friedman, Chief Judge of the United States District Court for the Eastern District of Michigan. Unfortunately, the parties were unable to come to an agreement. Accordingly, it is now proper for the Court to render decisions on the motions for summary judgment.

## II.    Legal Standard

Both parties have filed motions for summary judgment pursuant to Federal Rules of Civil Procedure 56(c). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as to a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however,

5

to judge the evidence or make findings of fact. *Id*. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id*. at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission

6

of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.   Plaintiff's Partial Motion for Summary Judgment

Plaintiff's motion for summary judgment requests a determination of Plaintiff's RLUIPA claim.  Plaintiff argues that it should prevail as a matter of law on its RLUIPA claim, while Defendants counter that the RLUIPA claim should fail as a matter of law.

RLUIPA was signed into law in the year 2000.  Its purpose was to codify the existing Supreme Court jurisprudence of religious protections as they relate to land use laws and institutionalized persons.  RLUIPA contains two main operative sections: Section 2, dealing with religious land use, and Section 3, dealing with institutionalized persons.  Only Section 2 is applicable in the current case.  The relevant language of the statute states:

§ 2000cc.  Protection of land use as religious exercise
   (a) Substantial burdens.
      (1) General rule. No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
         (A) is in furtherance of a compelling governmental interest; and
         (B) is the least restrictive means of furthering that compelling governmental interest.
      (2) Scope of application. This subsection applies in any case in which--
         . . .
         (C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government

7

makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

42 U.S.C. § 2000cc.

RLUIPA defines a "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. § 2000cc-5(5).

Generally there are three steps to a RLUIPA analysis: (1) a jurisdictional step and the issue of an individualized assessment; (2) plaintiff's *prima facie* case and the issue of a substantial burden to religious exercise; and (3) defendant's rebuttal and the issue of a compelling interest achieved by the least restrictive means. *See Guru Nanak Sikh Soc'y v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006); *Grace United Methodist Church v. City of Cheyenne*, 235 F. Supp. 2d 1186, 1193 (D. Wyo. 2002).

### A.      Individualized Assessment

The first step in a RLUIPA analysis is a jurisdictional step to determine whether RLUIPA applies. The jurisdictional element of a RLUIPA violation is established if Plaintiff can show that "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2).

An individualized assessment involves a "case-by-case evaluation of the proposed activity."

8

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir. 2004). "The general rule that emerges from the case law is that the determination of whether the governmental action is an 'individualized assessment' depends on whether the decision was subjective in nature. Thus, even assuming that a governmental entity's enactments are neutral laws of general applicability, their application to particular facts nevertheless can constitute an individualized assessment – particularly where, as here, the application does not involve a mere numerical or mechanistic assessment, but one involving criteria that are at least partially subjective in nature." *Living Water Church of God v. Charter Township of Meridian*, 384 F. Supp. 2d 1123, 1130 (W.D. Mich. 2005) (citation omitted).

Plaintiff makes two arguments in support of the existence of an individualized assessment. First, it argues that Defendants' application of the zoning interpretation requiring 95 parking spaces is an individualized assessment. The ZBA has made an interpretative ruling that the off-street parking requirements of the City's zoning ordinances require that all of the uses of the Rutland building be considered concurrently in determining the number of parking spaces. Adding up the spaces required for all the uses of the Rutland building including the worship space, Sunday school classrooms, and administrative offices, yields a total of 95 parking spaces. Plaintiff argues that since all the uses of the Rutland building will not occur concurrently, it is improper to add all of the uses together when calculating parking spaces. Plaintiff also argues that Defendants have not uniformly applied the parking requirement and parking interpretation in previous instances, and are now applying it against Plaintiff in an individualized manner. In support, Plaintiff notes the existence of two churches in the Rutland building for years before Plaintiff's use without any complaints from Defendants and without any enforcement of the parking ordinances. Plaintiff also notes an internal

9

e-mail message between Nicholas Banda and Sarah Mulally, an employee of the City, which indicated that site plan approvals for other buildings were not always required when approving the uses of certain other buildings, and thus, that Plaintiff was being treated differently than other entities. *See* Pl. Exhibit 51 (July 14, 2006) [docket entry 104].

Defendants argue in response that Plaintiff is challenging a parking ordinance that is being generally and neutrally applied with no subjective or individualized assessment. Defendants argue that the zoning interpretation requiring the addition of all the uses of the building for the calculation of the total number of required parking spaces is a mere numerical and mechanistic application of the parking ordinance which does not take into account the religious use of the building.

When considering all the facts in the light most favorable to Defendant, Plaintiff is unable to establish the existence of an individualized assessment by the City's application of the zoning interpretation of the parking regulation which requires that all the uses of the building be added together. Defendants bring forward testimonial evidence, which must be viewed in the light most favorable to Defendants, and which tends to show that the Church is not being singled out or treated differently than other entities. Furthermore, the interpretation of the parking regulation and its application by adding up the number of uses of the Rutland building involve a numerical application with no subjective element. Accordingly, the Court does not find that this is an instance of an individualized assessment.

Plaintiff's second argument for the existence of an individualized assessment is the recent denial by the ZBA of Plaintiff's application for a parking variance. Since the City claims that only 48 parking spaces are possible on the Rutland property and that 95 total spaces are required to cover all the concurrent uses of the building, Plaintiff applied to the ZBA for a parking variance for 47

parking spaces.  At a meeting held on October 17, 2006, the ZBA denied Plaintiff's request for a parking variance.  The reason for the denial of the parking variance was that there would be "a negative impact on surrounding properties because it will result in overflow parking onto adjacent properties, street rights-of-way, and residential properties to the north."  Exhibit (Oct. 31, 2006) [docket entry 154].  In response, Defendant argues that this action taken by the ZBA is not an individualized assessment because there are certain criteria for granting variances, and that these criteria were applied in a non-subjective manner.

The Court disagrees and finds that the ZBA's denial of Plaintiff's application for a parking variance was an individualized assessment.  The parking ordinance is a general land use regulation that normally requires a certain amount of off-street parking based on the use of a building.  If there is insufficient off-street parking, a certificate of occupancy cannot be issued, and consequently, a party is barred from using its building.  Thus, the parking ordinance is a "land use regulation" which "limits or restricts" a claimant's use of its land.  *See* 42 U.S.C. § 2000cc-5(5).  It is undisputed, however, that variances to this parking ordinance can be granted by the ZBA.  In other words, this land use regulation can be applied differently in different circumstances.  Even though there may be certain criteria that the ZBA consults in determining whether to grant a variance or not, the discretion remains with the ZBA.  The ZBA could grant a variance for 5 parking spaces, or 25 parking spaces, or 47 parking spaces.  Therefore, since the ZBA is able "to authorize relaxation of the ordinance provisions and to grant variances in certain cases," there is an individualized assessment.  *Living Water Church of God*, 384 F. Supp. 2d at 1130.

It is undisputed that in this particular case, the ZBA denied a parking variance to Plaintiff.  The ZBA could have granted the parking variance if it so desired.  In fact, one member of the five-

member panel of the ZBA voted in favor of granting the parking variance.  Thus, the ZBA

considered Plaintiff's individual case and made a determination that is "at least partially subjective

in nature."  *Id.*  Consequently, it is undisputed the denial of the parking variance is an individualized

assessment and that the jurisdictional element for a RLUIPA violation is satisfied.

### B.      Substantial Burden

For a RLUIPA claim, after the jurisdictional requirement is established, the next issue for

the Court to consider is whether the governmental action imposes a substantial burden on religious

exercise.  *See* 42 U.S.C. § 2000cc(a)(1).  If Plaintiff can demonstrate this substantial burden on its

religious exercise, then it establishes a *prima facie* case of a RLUIPA violation.  Here, Plaintiff

argues that the parking ordinance is a substantial burden on Plaintiff's use of the Rutland building

for worship purposes.  Plaintiff argues that the denial of the parking variance prevents Plaintiff from

obtaining a certificate of occupancy for their building, which in turn prevents Plaintiff from use of

their building for worship purposes.  Defendants argue that Plaintiff cannot show the existence of

a substantial burden.

In defining "substantial burden," the Seventh Circuit has stated that "a land-use regulation

that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary,

and fundamental responsibility for rendering religious exercise – including the use of real property

for the purpose thereof within the regulated jurisdiction generally – effectively impracticable."  *Civil*

*Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

Defendants argue that the parking ordinance is blind to the particular use of the property, but

instead simply considers the number of people on the property.  Defendants note that use of the

building as a church is generally permitted in the particular zoning district.  Defendants also note

that the parking ordinance does not prohibit the building's use as a church, but that it simply prohibits use if there is an inadequate number of parking spaces for the total number of people. Thus, Defendants argue, there is no substantial burden to religious exercise.

The Court disagrees with Defendants' argument.  The Court finds that based on the language of RLUIPA, the land use regulation need not specifically target religious exercise.  A land use regulation that is specifically blind to religious use of land can still substantially burden religious exercise.  In *Living Water Church of God v. Charter Township of Meridian*, a special use permit was denied in violation of RLUIPA not because of the religious nature of the school, but rather because of density and land to building ratios.  *Living Water Church of God*, 384 F. Supp. 2d at 1129.  In a recent and very similar case from the Colorado Court of Appeals, *Town of Foxfield v. Archdiocese of Denver*, the RLUIPA violation involved a parking ordinance which limited the number of parked vehicles permitted in a neighborhood with no relation to the actual uses occurring on the property.  *Town of Foxfield v. Archdiocese of Denver*, 2006 Colo. App. LEXIS 1282 (Colo. Ct. App. 2006).  Thus, land use regulations may substantially burden religious exercise without specifically targeting religion.

It is undisputed that the parking ordinance currently prohibits Plaintiff from using its building, and that Plaintiff wants to use its building for religious exercise.  The ZBA had the power to grant a variance to the parking requirement currently barring Plaintiff from use of the building, but it did not do so.  Therefore, there is an application of a land use regulation which prevents or burdens Plaintiff from using its building for religious exercise.

Defendants further argue that the burden on religious exercise is not substantial because they have not excluded Plaintiffs from exercising their religion within the City of Southfield.  In the

13

Seventh Circuit case of *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, after its application for a zoning variance was denied, the plaintiff church faced the possibility of having to sell its land and finding an alternative piece of land or the possibility of being subject to unreasonable delay in restarting its application for a variance.  *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 899-900 (7th Cir. 2005). The Court of Appeals for the Seventh Circuit ruled that:

> The burden here was substantial. The Church could have searched around for other parcels of land (though a lot more effort would have been involved in such a search than, as the City would have it, calling up some real estate agents), or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty, and expense. That the burden would not be insuperable would not make it insubstantial.

*Sts. Constantine & Helen Greek Orthodox Church, Inc.*, 396 F.3d at 901.

Here, it is undisputed that Plaintiff cannot currently use its building for worship purposes. Worship services are fundamental to the practice and exercise of one's religious beliefs.  Selling its current building and searching for another is not a mere inconvenience to Plaintiff.  Instead, the Court finds that the burden on Plaintiff is substantial.  Consequently, the Court finds that Plaintiff has established a *prima facie* case of a RLUIPA violation by demonstrating that the application of the parking ordinance imposes a substantial burden on Plaintiff's religious exercise.

### C.    Compelling Government Interest and Least Restrictive Means

Once Plaintiff establishes a *prima facie* case of a RLUIPA violation by demonstrating that the land use regulation imposes a substantial burden on religious exercise, the burden shifts to Defendants to demonstrate that the land use regulation is the least restrictive means to further a compelling government interest.  *See* 42 U.S.C. § 2000cc(a)(1).

14

The reasoning for denying the parking variance, as articulated by the ZBA, is that a variance would have "a negative impact on surrounding properties because it will result in overflow parking onto adjacent properties, street rights-of-way, and residential properties to the north."  Exhibit, [docket entry 154].  Defendants argue that regulating parking and traffic in order to protect the safety of citizens is a compelling government interest, and that the parking ordinance is the least restrictive means to achieve that interest.  Defendants also argue that the Rutland building has insufficient parking spaces for Plaintiff's use, and consequently, the overflow parking will clog the streets around the Rutland building, endangering the public safety of citizens.

In response, Plaintiff argues that parking considerations are never a compelling government interest.  Defendants note that the Second Circuit observed: "We know of no controlling authority, either in the Supreme Court or any circuit holding that traffic problems are incapable of being deemed compelling."  *Westchester Day School v. Village of Mamaroneck*, 386 F.3d 183, 191 (2d Cir. 2004).  This Court need not determine whether parking and traffic problems are a compelling government interest because even assuming that it is a compelling interest, the Court finds that Defendants have not shown that the parking ordinance prohibiting use of the church is the least restrictive means to achieve the stated interest.

Defendants have failed to provide evidence demonstrating that preventing Plaintiff from using their building for worship is necessary in order to promote the City's interests in parking and traffic.  First, in Nicholas Banda's deposition, Mr. Banda conceded that he could not explain why three worship space seats corresponded to one parking space, as opposed to four worship space seats to one parking space.  Pl. Exhibit 43, pp. 92-94 (June 19, 2006) [docket entry 68].  Accordingly, Defendants have not brought forth evidence showing that use of the worship space will lead to a

15

certain number of extra vehicles affecting parking and traffic.  Furthermore, Defendants argue that Rutland Drive is the primary road for ingress and egress from 8 Mile Road, and that the parking ordinance is necessary to keep access to the Rutland Drive area free for resident and emergency vehicles.  Street parking, however, is prohibited on Rutland Drive.  Therefore, there is no possibility that Rutland Drive and its subsequent access to 8 Mile Road will become clogged with parked vehicles.  Moreover, there is short-term street parking available on some neighboring streets.  Since the City permits street parking on these neighboring streets, it is doubtful that parking on those streets will create a traffic problem.  Plaintiff has also stated that it is willing to shuttle people to and from the Rutland building, if the need arose to alleviate parking difficulties.  Given Defendants' lack of evidence demonstrating that if Plaintiff used the Rutland building for worship, there would be overflow parking that would hurt the local traffic situation, an outright prohibition of the use of the Rutland building for worship is simply an excessive means to accomplish the City's stated traffic interest.  Therefore, even when taking the facts in the light most favorable to Defendants, the Court finds that Defendants have failed to show that prohibition of the use of the Rutland building for worship is the least restrictive means to accomplish its traffic and parking interests.  Accordingly, Defendants have failed to rebut Plaintiff's *prima facie* case of a RLUIPA violation.  The Court therefore finds that the denial of the parking variance and the application of the parking ordinance to bar Plaintiff from proceeding in obtaining a certificate of occupancy is a violation of RLUIPA.

D.    **The Constitutionality of RLUIPA**

In their motion for summary judgment, Defendants argue that Plaintiff's RLUIPA claim fails because RLUIPA is unconstitutional.    Defendant gives four reasons for RLUIPA's unconstitutionality:

16

1. RLUIPA establishes religion in violation of the First Amendment.

2. RLUIPA exceeds congressional power under Section V of the Fourteenth Amendment.

3. RLUIPA exceeds congressional power under the Commerce Clause.

4. RLUIPA infringes on state sovereignty under the Tenth Amendment.

The Court finds that Defendants' arguments are unpersuasive and that the arguments set out by Intervenor United States in support of RLUIPA's constitutionality are compelling. In particular, the Court finds that RLUIPA does not establish religion in violation of the First Amendment. RLUIPA does not favor or promote a certain specific religious message. Instead, RLUIPA frees groups and individuals to practice religion in whatever manner they choose. In *Cutter v. Wilkinson*, the Supreme Court found that RLUIPA's provisions involving institutionalized persons do not establish religion in violation of the First Amendment. *Cutter v. Wilkinson*, 544 U.S. 709 (2005). The Supreme Court's reasoning in *Cutter* can be equally applied to those provisions of RLUIPA involving land use regulations. *See also Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1242 (11th Cir. 2004); *United States v. Maui County*, 298 F. Supp. 2d 1010, 1014 (D. Haw. 2003) (finding that RLUIPA's provisions related to land use regulations do not violate the Establishment Clause).

The Court also finds that under Section V of the Fourteenth Amendment, Congress has the power to enforce the provisions of the Fourteenth Amendment, and that as such, Congress has the power to determine legislation necessary to secure the guarantees of the Free Exercise Clause of the First Amendment. Consequently, Congress had the authority to enact RLUIPA. All circuit courts and almost all district courts which have considered this issue have found that RLUIPA is a constitutional use of congressional power under Section V of the Fourteenth Amendment. *See Guru*

17

*Nanak Sikh Soc'y v. County of Sutter*, 456 F.3d 978, 995 (9th Cir. 2006); *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 898 (7th Cir. 2005); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1239-40 (11th Cir. 2004); *United States v. Maui County*, 298 F. Supp. 2d 1010, 1016 (D. Haw. 2003); *Freedom Baptist Church v. Twp. of Middletown*, 204 F. Supp. 2d 857, 874 (E.D. Pa. 2002). Since the Court finds that RLUIPA is a constitutional exercise of congressional power under the Fourteenth Amendment, it need not consider whether RLUIPA is also a constitutional exercise of congressional power under the Commerce Clause.

Finally, the Court finds that RLUIPA does not violate the Tenth Amendment. The Tenth Amendment reserves to the States those powers not enumerated in the Constitution. Since Congress enacted RLUIPA pursuant to its power enumerated in the Fourteenth Amendment, by necessity RLUIPA does not violate the Tenth Amendment. *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1242-43 (11th Cir. 2004); *Westchester Day School v. Village of Mamaroneck*, 280 F. Supp. 2d 230, 239 (S.D.N.Y. 2003). In conclusion, the Court finds that RLUIPA is not unconstitutional.

### E.   Conclusion on the Issue of RLUIPA and Plaintiff's Motion for Summary Judgment

For the above reasons, the Court finds that the denial of the parking variance and the application of the parking ordinance preventing Plaintiff from obtaining a certificate of occupancy is a violation of RLUIPA. The Court notes, however, that this finding of a RLUIPA violation is limited only to the issue of the parking ordinance. Accordingly, insofar as Plaintiff's partial motion for summary judgment is limited to the consideration of the parking ordinance, Plaintiff's partial

18

motion for summary judgment is granted.

The Court notes that Plaintiff is currently barred from using the Rutland Drive building for worship purposes because it does not have a certificate of occupancy. Both parties recognize that the largest hurdle preventing Plaintiff from obtaining a certificate of occupancy is the issue of parking. As explained above, the Court finds that the Defendants' denial of the parking variance and the application of the parking ordinance is a RLUIPA violation. Defendants assert, however, that notwithstanding the parking issue, there are many other building code violations that prevent Plaintiff from obtaining a certificate of occupancy, and thereby preventing Plaintiff from using its building for worship. Defendants allege that some of these building code violations identify unsafe building conditions. Plaintiff responds by arguing that the building code violations cited by Defendants are just another attempt by Defendants to delay Plaintiff's access to the building. In Plaintiff's amended motion for partial summary judgment, Plaintiff asserts that the building code violations may be easily remedied. *See* Pl. Am. Mot. Sum. Judg., ¶ 38 (June 14, 2006) [docket entry 63]. At this time, however, the parties have not presented arguments and evidence related to the issue of the building code violations. Furthermore, the building code violations might be easily resolved through extra-judicial means. Accordingly, the Court will not address this issue of the current building code violations.

## IV.    Defendants' Motion for Summary Judgment

In Defendants' motion for summary judgment, Defendants argue that Plaintiff's RLUIPA claim fails as a matter of law. The Court has concluded above that there is a violation of RLUIPA and thus Defendants' argument on the RLUIPA claims fails. Defendants' motion goes on to argue that Plaintiff's claims fail for several other reasons. The Court will now address these other issues.

19

### A.      Lack of Ripeness

A case can only proceed if it is ripe.  *See Bigelow v. Michigan Dept. of Natural Resources*, 970 F.2d 154, 157 (6th Cir. 1992).  Defendants argue that the case is not ripe because Plaintiff has not exhausted all administrative remedies.  In order to ensure ripeness, on August 29, 2006 this Court ordered Plaintiff to submit another application for a parking variance.  At an October 17, 2006 meeting, the ZBA denied Plaintiff's application for a parking variance.  A decision by the ZBA is a final one.  *See* M.C.L. § 125.3605 ("The decision of the zoning board of appeals shall be final.").  Without a parking variance, Plaintiff is unable to obtain a certificate of occupancy to use its building.  Accordingly, Plaintiff's claims are ripe for consideration.

### B.  Existence of a Prior, Valid Judgment

Defendant argues that Plaintiff's claims are barred because there was a final judgment in state court denying Plaintiff's use of the Rutland building and that, based on the principles of res judicata and collateral estoppel, Plaintiff cannot contest the final state court judgment.  The state court judgement entered against Plaintiff simply upheld the civil infraction against Plaintiff and ordered Plaintiff to cease and desist using the Rutland building because Plaintiff did not have a certificate of occupancy.  After review of the state court documents, the Court finds that Plaintiff's constitutional claims were not litigated or resolved in state court.  Furthermore, Plaintiff is not contesting the state court judgment finding that Plaintiff was committing a civil infraction by occupying a building without a certificate of occupancy.  Instead, Plaintiff is contesting Defendants' actions and the application of an ordinance which currently bars Plaintiff from the ability to obtain a certificate of occupancy.  Accordingly, Plaintiff's claims are not barred by the existence of a prior judgment under the doctrines of res judicata or collateral estoppel.

C.      **Rooker-Feldman Doctrine**

Defendant argues that Plaintiff is precluded from arguing its case because of the Rooker-Feldman doctrine.  The Rooker-Feldman doctrine prohibits the federal lower courts "from exercising appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings."  *Gilbert v. Ferry*, 401 F.3d 411, 416 (6th Cir. 2005) (citation and internal quotation omitted).  Defendant argues that entertaining Plaintiff's claims would be tantamount to an appellate review of the state court decision which ordered Plaintiff to cease and desist the use of the building without a certificate of occupancy.

As noted above in the Court's discussion about res judicata and collateral estoppel, the state court simply found that Plaintiff was committing a civil infraction because it did not have a certificate of occupancy for the Rutland building.  The state court did not make a ruling on Plaintiff's claims that Defendants' actions violated RLUIPA and other constitutional rights of Plaintiff.  Accordingly, since this Court is not exercising appellate jurisdiction over the state court proceeding, Plaintiff's claims are not barred by the Rooker-Feldman doctrine.

D.      **Equal Protection**

Defendants argue that Plaintiff's equal protection claim should be dismissed because Plaintiff cannot establish that the ordinances were applied differently to other parties who were similarly situated, and further, that the ordinances are rationally related to a legitimate state interest.

Taking the facts in the light most favorable to Plaintiff, there is sufficient evidence to support an equal protection claim.  Plaintiff has brought forward evidence showing that it has been treated differently than the two previous churches which had lawfully occupied the Rutland building and

that it has been treated differently than the other city entities who did not need to go through the same administrative procedures as Plaintiff in order to receive a certificate of occupancy or site plan approval.  Plaintiff has also brought forward sufficient evidence to support a claim that the parking ordinances of the City of Southfield prohibiting Plaintiff from obtaining a certificate of occupancy are not rationally related to a legitimate interest.  Accordingly, Plaintiff's equal protection claim does not fail as a matter of law.

> E.      **Substantive and Procedural Due Process**

Defendants argue that Plaintiff has failed to state a substantive due process claim.  Plaintiff responds by saying that courts have recognized that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions."  *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1215-16 (6th Cir. 1992).  Plaintiff also reiterates its arguments made with respect to the equal protection claim.  Again, when taking the facts in the light most favorable to Plaintiff, Plaintiff has brought forward sufficient evidence to show the existence of an arbitrary zoning decision that is targeted against Plaintiff.

For Plaintiff's procedural due process claim, Defendants argue that Plaintiff did not take advantage of the administrative remedies afforded to Plaintiff.  As this Court has already stated, Plaintiff has now exhausted the available administrative remedies due to the ZBA's denial of Plaintiff's parking variance.  Considering the evidence in the light most favorable to Plaintiff, Plaintiff has brought forward evidence supporting a claim that Defendants denied the parking variance to Plaintiff, not because of legitimate parking concerns, but because Defendants no longer approve of Plaintiff's use of the Rutland building as a church.  Accordingly, Plaintiff's claims on this issue do not fail as a matter of law.

22

**F.      Doctrine of Unclean Hands**

Defendants finally argue that Plaintiff is guilty of bad faith conduct by not following the proper administrative procedures in attempting to obtain a certificate of occupancy for their building, and that the Court should deny Plaintiff's claims as a matter of equity. Having considered Plaintiff's claims and the evidence presented in the light most favorable to Plaintiff, the Court fails to find that there is sufficient evidence to support a claim that Plaintiff has acted in bad faith. Consequently, Defendants' argument based on the doctrine of unclean hands is without merit.

**G.      Conclusion on Defendants' Motion for Summary Judgment**

In conclusion, for all the above reasons, when considering the facts presented in the light most favorable to Plaintiff, Defendants are not entitled to summary judgment as a matter of law. Plaintiff has come forward with evidence tending to support its claims that it has been treated differently due to the City's preference for the adjacent residential development. Taking the facts and inferences therefrom in the light most favorable to Plaintiff, summary judgment is not proper for Defendants.

**V.      Conclusion**

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry 46] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's amended motion for partial summary judgment is [docket entry 63] is **GRANTED**.

Plaintiff has also filed a motion in limine on July 12, 2006 and a motion for sanctions on July 14, 2006. In an order issued August 8, 2006, this Court granted Defendants' request for an extension of time to respond to the motion in limine and the motion for sanctions until after the resolution of

23

the dispositive motions.  Since the dispositive motions are resolved in the present order, the Court

will now require Defendants to respond to Plaintiff's motions.  Accordingly, Defendants shall file

a response to Plaintiff's motion in limine [docket entry 92] and to Plaintiff's motion for sanctions

[docket entry 102] within **fourteen (14) days** of the issuance of this order.  Plaintiff may file a reply

within **seven (7) days** of service of Defendants' responses.

      **SO ORDERED.**


Dated: January 3, 2007             s/Paul V. Gadola
                                           HONORABLE PAUL V. GADOLA
                                           UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on  1/3/2007  , I electronically filed the foregoing paper with the Clerk
of the Court using the ECF system which will send notification of such filing to the
following:
 Daniel Dalton, Michael Hyde, Anne McLaughlin, T. Joseph Seward, L. Michael Wicks,
and I hereby certify that I have mailed by United States Postal Service the paper to the
following non-ECF participants: n/a  .

                                       s/Ruth A. Brissaud
                                       Ruth A. Brissaud, Case Manager
                                       (810) 341-7845